UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAFAEL FEBUS, *on behalf of himself and all others similarly situated*,

                    Plaintiff,

-against-

GUARDIAN FIRST FUNDING GROUP, LLC, and RAFAEL JASON LEVY, MARK FIDEL and ROBERT STARK, *individually*,

                    Defendants.

10-Cv-2590 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    This is the story of a sophisticated businessman who contracted to make certain payments in settlement of this action.  He has failed to honor his commitments and is now being called to account by plaintiffs for his contractual breaches.  On May 14, 2012, this Court granted final approval to a settlement of this collective and class action that alleged that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and New York labor law ("NYLL") for a massive failure to pay overtime and minimum wages to its eligible employees. (*See* Order for Final Approval of the Settlement ("Final Approval"), Dkt. No. 136.)  The Settlement Agreement, consisting of the Memorandum of Understanding dated January 6, 2012 and the Addendum to the Memorandum of Understanding dated February 16, 2012, provided that the three individual defendants pay a total of $850,000 over five installments, to be completed in May 2015.  Defendant Robert Stark, alone among the individual defendants, has defaulted on his obligations and is now ordered to pay $239,285.67 plus prejudgment interest.

## I. FACTUAL BACKGROUND

In March 2010, plaintiff Rafael Febus brought this FLSA and NYLL action on behalf of himself and other current and former loan officers of defendant Guardian First Funding Group, LLC, a large traditional and reverse mortgage lender, alleging overtime and minimum wage violations by defendants, officers of Guardian First. Stark was the President and owner of Guardian First (*see* Defs.' Answer and Affirmative Defenses to Class Action Amended Compl. ¶ 13, Dkt. No. 107), which has ceased doing business since the Settlement Agreement was executed. (*See* Memorandum in Support of Joint Motion for Final Approval of the Proposed Settlement ("Joint Mot. for Final Approval") at 13, Dkt. No. 131.) Seven months after the lawsuit began, the FLSA collective action was conditionally certified pursuant to 29 U.S.C. § 216(b) (Dkt. No. 77), and fifty-eight individuals opted into the collective. The Court later certified a Rule 23 class under the NYLL for loan officers who had worked in New York state. (Dkt. No. 101.)

### A. The Settlement

After motion practice and mediation led by the Honorable Kathleen Roberts, a retired federal magistrate judge, and attended personally by Stark as well as his attorney, Ari Karen, Esq., all parties reached a resolution as to all claims and executed a Memorandum of Understanding. (*See* Affidavit of Reena I. Desai in Support of Mot. to Enforce the Settlement Agreement ("Desai Aff.") ¶ 3, dated October 29, 2014; Memorandum of Understanding Between Plaintiffs and Defendants Guardian First Funding Group, LLC, Rafael Jason Levy, Robert Stark, and Mark Fidel (the "MOU"), Ex. 1 to Desai Aff.) The MOU provided for $850,000 to be paid to plaintiffs in four installments:

Installment 1

$450,000.00 to be paid by Defendants within 90 days of the date of [the MOU], with Defendants Stark and Levy paying a total of $435,000.00, and Defendant Fidel paying $15,000.00.

. . .

Installment 2

$133,333.33 to be paid by Defendants on May 1, 2013, with Defendants Stark and Levy paying $48,333.33 each, and Defendant Fidel paying $36,666.67.

Installment 3

$133,333.33 to be paid by Defendants on May 1, 2014, with Defendants Stark and Levy paying $48,333.33 each, and Defendant Fidel paying $36,666.67.

Installment 4

$133,333.34 to be paid by Defendants on May 1, 2015, with Defendants Stark and Levy paying $48,333.34 each, and Defendant Fidel paying $36,666.66.

(MOU at 1.)

In the MOU, defendants also agreed to execute a confession of judgment whereby they would confess to a judgment in the amount of 30% more than their respective share of the settlement in the event of default. (*Id.*) The MOU was executed by the attorney for plaintiffs and by Stark individually, as well as by Ari Karen, his attorney. (*Id.* at 5.)

Trouble began rather quickly. Stark sought a modification of the payment terms in his favor, and, in February of 2012—one month after the MOU was executed—the parties agreed that Stark and Levy, instead of having to make an initial payment of $435,000 within 90 days, would only have to pay $335,000 within 90 days (Installment 1) and the additional

$100,000 would be placed in escrow and released on February 7, 2013 (Installment 2). The May 2013, 2014, and 2015 payments (now Installments 3 through 5) remained the same. This was memorialized in an Addendum to the MOU, which was executed on February 16, 2012 by the attorneys for the parties. (*See* Addendum to Memorandum of Understanding Between Plaintiffs and Defendants Guardian First Funding Group, LLC, Rafael Jason Levy and Robert Stark (the "Addendum"), Ex. 2 to Desai Aff.) Paragraph 7 of the Addendum stated that "Counsel for Guardian First, Levy and Stark has full authority to execute this Addendum on behalf of Defendants Guardian First, Levy and Stark." (*Id.* at 2.) When the proposed settlement was presented to the Court for its approval, the parties represented jointly that the Addendum was an accommodation to Stark. (*See* Joint Mot. for Final Approval at 13.)

The Court granted preliminary approval of the Settlement Agreement, consisting of the MOU and the Addendum, on February 21, 2012. (Dkt. No. 129.) As of the time of the fairness hearing on May 14, 2012, the individual defendants had not yet executed the confession of judgment, but counsel for the parties represented that defendants' signatures were "anticipated in the next few days." (Joint Mot. for Final Approval at 13 n.8.) Based in part on those representations, the Court granted final approval of the Settlement Agreement on May 14. (Final Approval, Dkt. No. 136.) Following notice of the settlement to the FLSA collective and NYLL class members, 172 individuals participated in the settlement.

### B. Stark's Default

In lieu of the $100,000 that Stark and Levy were obligated to place in escrow for Installment 2 (*see* Addendum at 1), Stark and Levy placed shares of stock of Knight Capital Group, Inc. ("Knight")[1] purportedly worth $100,000 in escrow, half of which were Levy's stock and half of

---

[1] Guardian First had ceased operations as of May 2012, and its successor entity was Knight. (*See* Joint Mot. for Final Approval at 13.)

4

which were Stark's stock. The value of the shares depreciated significantly from the time they were placed in escrow to the time they were ultimately liquidated. Mr. Levy agreed to make plaintiffs whole and pay the $50,000 he was obligated to pay for Installment 2. (Desai Aff. ¶ 6.) Stark, however, did not pay the difference between the value of the shares ($16,131) and $50,000, and therefore has paid only $16,131 instead of $50,000. (*See* Letter from Reena I. Desai, Esq. to Robert Stark, dated May 1, 2013, Ex. 3 to Desai Aff.)[2]

Stark paid the first of the $48,333.33 payments in May 2013, but defaulted on his May 2014 payment. (Letter from Reena I. Desai, Esq. to Robert Stark, dated May 5, 2014, Ex. 4 to Desai Aff.) Plaintiffs' counsel put him on notice that he had thirty days to cure his default, as provided in the MOU. (*Id.*; *see also* MOU at 1.)

Stark has not cured the default and plaintiffs have now moved to enforce the terms of the Settlement Agreement against Stark. Plaintiffs request that the Court enter judgment against Stark in the amount of $239,285.67, plus prejudgment interest, comprised of the unpaid portion of the escrow payment (Installment 2), the May 2014 payment (Installment 4), the accelerated May 2015 payment (Installment 5), and the 30% charge on his total obligation due to his default.[3]

---

[2] Counsel for plaintiffs has represented that the liquidated value of the shares Stark deposited into escrow was $16,131 (*see* Mem. of Law in Support of Pls.' Mot. to Enforce Settlement Agreement at 5, Dkt. No. 141), and Stark has not contested that figure.

[3] Stark's total obligation under the Settlement Agreement is $362,500, which is the sum of $167,500 (half of the $335,000 from Installment 1), $50,000 (half of the $100,000 escrow payment from Installment 2), $48,333.33 (Installment 3), $48,333.33 (Installment 4), and $48,333.34 (Installment 5). The 30% increase therefore totals $108,750. The $239,285.67 sought is comprised of that $108,750 plus $48,333.33 (Installment 4), $48,333.34 (accelerated Installment 5), and $33,869 (the unpaid portion of Installment 2).

In response, Stark, now *pro se*, contends that he is not bound by the confession of judgment, which he never executed, or the Addendum, which only his counsel signed. He asserts that he did not agree with the Addendum and that he bears no responsibility for the depreciation in the value of the shares of Knight stock held in escrow and therefore owes no money to plaintiffs. His arguments are unavailing.

## II.  LEGAL STANDARD

District courts have the power to enforce a settlement agreement where "the court makes 'the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). This Court approved the terms of the Settlement Agreement after a fairness hearing in open court and specifically retained jurisdiction over this matter "for purposes of resolving issues related to administration, implementation and enforcement of the Settlement." (Final Approval ¶ 9.)

A settlement, once reached, is a binding contract, which is interpreted according to the principles of contract law. *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443-44 (2d Cir. 2005). Settlement agreements receive a "presumption in favor of enforcement" and will not be disturbed by a "change of heart" of one of the parties. *See Renaissance Search Partners v. Renaissance Ltd., LLC*, No. 12-Cv-5638, 2013 WL 6839039, *2-3 (S.D.N.Y. Oct. 15, 2013) (internal quotation marks omitted); *see also Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."), *aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998).

Contract terms should be interpreted according to their plain meaning in the absence of contractual ambiguity. *See, e.g., Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010); *Wayland Inv. Fund, LLC v. Millenium Seacarriers Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000). There is no ambiguity in the contractual language here, and Stark does not argue otherwise.

### III. DISCUSSION

**A. Stark is bound by the terms of the Settlement Agreement.**

*1. The Memorandum of Understanding (the "MOU") and the Addendum*

Stark is bound by the terms of the Settlement Agreement, as clearly set forth in the MOU and the Addendum. Stark personally attended the January 2012 mediation session along with his counsel, and the parties reached a resolution of all claims and subsequently executed the MOU. (*See* Desai Aff. ¶ 3; *see also* MOU at 5.) "It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Preston Frankford Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Butler Dining Servs., LLC*, 757 F. Supp. 2d 248, 252 (W.D.N.Y. 2010). Although Stark did not personally sign the Addendum, which was entered into for his benefit and extended the timing of the payments the MOU obligated him to make, the Addendum was signed on his behalf by his attorney, and it expressly states that counsel for Stark "has full authority to execute this Addendum" on his behalf. (Addendum at 2.)

It is beyond reproach that "[w]hen an attorney has been retained, he has certain implied powers to act for his client," specifically the apparent authority to act in all matters properly connected with the suit. *Stone v. Bank of Commerce*, 174 U.S. 412, 422 (1899). Where an attorney has "apparent authority" to settle a case, and "opposing counsel has no reason

7

to doubt that authority, the settlement will be upheld" regardless of later protestations by the party to the contrary. *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989).

Apparent authority arises from the representations of the principal toward a third party regarding the authority of the agent. *See United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993). Participating in a settlement conference with one's attorney and opposing counsel, as an example, confers such authority on an attorney. *Alvarez*, 146 F. Supp. 2d at 335. Moreover, because courts may "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so[,] . . . any party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority." *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996).

Stark has not met this burden. Karen clearly had apparent authority to enter the Settlement Agreement, as Stark personally held him out as his lawyer at the mediation and Stark himself signed the MOU. Stark's post-settlement disavowal of his counsel's authority is ineffectual. At no point in time from when the parties jointly submitted the terms of the MOU and the Addendum to the Court for preliminary approval in February 2012 to when the Court granted final approval in May 2012 did Stark object to the terms of the settlement or Karen's authority. As plaintiffs point out, Stark had every opportunity to protest his attorney's representation or withdraw his authority prior to approval of the settlement, but class counsel was not informed that Stark had fired Karen until nearly a year after the fairness hearing. (Desai Aff. ¶ 5.) Stark then waited another two years—until after plaintiffs had moved to enforce the settlement against him—to express his disapproval of the Settlement Agreement to this Court.

Once a court has determined that an attorney had apparent or actual authority to settle a case, arguments insisting on a "final ratification" by

8

the parties are "unavailing." *Reich v. Best Built Homes, Inc.,* 895 F. Supp. 47, 50 (W.D.N.Y. 1995) (internal quotation marks omitted). Stark's attorney had authority to execute the Addendum, and as his client, Stark is bound by the Settlement Agreement in toto.[4]

### a. Installment 4

Since the MOU and the Addendum are binding, the Court must determine how much Stark owes to plaintiffs as a result of his default on Installments 2 and 4 of the Settlement Agreement. Taking Installment 4 first, Stark does not dispute that he did not pay the May 1, 2014 payment. Stark was required to pay $48,333.33 to plaintiffs on or before May 1, 2014, and he failed to do so. He therefore owes plaintiffs $48,333.33 for this payment.

### b. Installments 1 and 2

Plaintiffs and Stark dispute the terms of Installments 1 and 2 as set forth in the Addendum. Stark contends that (1) he was entitled to pay his portion of the $100,000 payment in shares of Knight stock and (2) he is not liable for the drop in share value at the time the shares were released from escrow. Plaintiffs respond that the Addendum provides unambiguously for payments in cash and therefore Stark is responsible for any share depreciation.

The Addendum states in pertinent part:

---

[4] Stark's newly-asserted belief that Karen did not represent him effectively during settlement negotiations has no bearing on the enforceability of the Settlement Agreement. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) ("[C]lients must be held accountable for the acts and omissions of their attorneys."); *see also Hoodho v. Holder*, 588 F.3d, 184, 192 (2d Cir. 2009) ("[A] party who voluntarily chose an attorney as his representative in an action . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." (internal quotation marks omitted)).

> Installment 1
>
> $350,000.00 to be paid by Defendants within 90 days of the MOU, with Defendants Stark and Levy paying a total of $335,000.00, and Defendant Fidel paying $15,000.00.
>
> Defendants represent that an additional $100,000.00 remains in escrow to be released at the time of Installment 2.
>
> . . .
>
> Installment 2
>
> The $100,000.00 held in escrow shall be released and delivered or wired by Defendants Stark and Levy to [plaintiffs' counsel] on or before February 7, 2013.

(Addendum at 1.)

The Addendum plainly provides for cash payments. It does not contemplate shares of stock as an alternative to cash. A finding that the settlement terms anticipated payment in the form of shares of stock would "strain the contract language beyond its reasonable and ordinary meaning." *Hunt*, 889 F.2d at 1277 (internal quotation marks omitted). The Installment 2 language requires that the "$100,000.00 held in escrow shall be released and delivered . . . by Defendants Stark and Levy . . . on or before February 7, 2013." (Addendum at 1.) Even if Stark were under the impression that he could place $50,000 worth of shares he owned into escrow, it defies common sense that he could deliver a value less than $50,000 at the time the full amount of money was due to plaintiffs. Indeed, the Addendum provides that "Defendants represent that an additional $100,000.00 remains in escrow to be released at the time of Installment 2." (*Id.*)[5]

---

[5] Although the Addendum does not specify how Stark and Levy were to divide the $100,000 escrow payment, in reality this is a not an issue because 50% of the escrowed shares were owned by Stark and 50% by Levy; Levy has paid the $50,000 he owed to

10

This Court declines to read into the Settlement Agreement's terms language permitting shares of stock to be deposited instead of cash.  *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Indus.*, No. 11-Cv-681, 2013 WL 1651624, at *8 (S.D.N.Y. Apr. 15, 2013); *cf. Brandt v. MIT Development Corp.*, 552 F. Supp. 2d 304, 307, 321-22 (D. Conn. 2008) (permitting payment with shares of stock where stock payments were precisely delineated in the settlement agreement).  Since Stark did not release and deliver $50,000 cash to plaintiffs on or before February 7, 2013, he breached the Settlement Agreement and is obligated to pay the remaining portion of Installment 2, or $33,869, to plaintiffs.

### 2.   *The Confession of Judgment*

A confession of judgment "is a device whereby defendants admit that they owe the plaintiff a certain sum of money and consent to a judgment being entered against them for that amount; if they fail to make payments on the debt according to a specified schedule, the judgment may then be enforced." 2PT1 West's McKinney's Forms Civil Practice Law and Rules § 5:273; *see also Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502, 505 (1930). Confessions of judgment are often used to facilitate payment of debt in settlement of a lawsuit, as they "allow[] a creditor to avoid formal, lengthy, and expensive legal proceedings in order to collect from his debtor." *Alland v. Consumers Credit Corp.*, 476 F.2d 951, 957 (2d Cir. 1973).

Stark has a university degree in finance and has been an officer of several finance companies.  (*See* Deposition of Robert Stark at 22-24, dated July 26, 2010, Ex. A to Affidavit of Reena I. Desai in Support of Reply Mem. to Pls.' Mot. to Enforce the Settlement Agreement).  Even though he executed the MOU, which included an agreement to execute a confession of judgment, he claims in response to this motion that he is not subject to

---

plaintiffs; and Stark does not dispute that he and Levy intended to divide the $100,000 obligation evenly.

11

the confession of judgment since he did not ultimately sign a separate confession of judgment.

The MOU states in pertinent part:

Each Defendant agrees to execute a confession of judgment relating to his portion of the settlement.  In each confession of judgment, Defendants agree that if they fail to make any settlement payments due they confess to a judgment in the amount of 30% more than their share of the total settlement under this agreement, which shall be due and fully payable as of that date of default (minus any sums they already paid pursuant to this settlement agreement).  There shall be a 30 day written notice cure period.  Defendants agree that this confessed amount shall be a fair value for the claims asserted in this action, and understand that the settlement reached was a compromise of those claims due to Defendants' financial status.

(MOU at 1.)

The terms of the MOU and the Addendum, including the provision that each defendant confesses to a judgment "in the amount of 30% more than their share of the total settlement," are binding and enforceable. (*Id.*) Stark signed the MOU, which stated that he "agree[d] to execute" the confession of judgment. (*Id.*)  The parties also represented in their Joint Motion for Final Approval of the Proposed Settlement that Stark's execution of the confession of judgment was "anticipated in the next few days" (Joint Mot. for Final Approval at 13 n.8) and repeated that belief to the Court at the fairness hearing on May 14, 2012.  Other courts have enforced settlement agreements where a defendant agreed to, but then failed to, sign a confession of judgment. *See, e.g., M&I Marshall & Ilsely Bank v. Timberland Props., Inc.*, No. 09-Cv-0171, 2009 WL 4807312, at *1 (W.D. Mo. Dec. 7, 2009) (granting a motion to enforce a settlement agreement, based on general contract law principles, where defendants breached "the explicit terms of the settlement agreement by failing to sign the confession of judgment [provided for therein] and failing to remit

12

payment to Plaintiff"); *cf. Limberger v. Rabadi*, 806 N.Y.S.2d 445, at *3 (Civ. Ct. 2005) (entering default judgment in favor of plaintiff where defendant "repudiated the [settlement] agreement by failing to make payment[s] . . . and refusing to sign and return the proposed confession of judgment").

This Court finds that there was indeed a "meeting of minds" and that the parties intended to be bound by the confession of judgment even without its subsequent execution. *United States v. Sforza*, 326 F.3d 107, 116 (2d Cir. 2003); *see also U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, No. 06-Cv-382, 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007) (Where a party has entered into an oral agreement reported to the court, "the party cannot avoid the [agreement] by refusing to sign the papers that would memorialize" its terms). Stark, a sophisticated financial actor, cannot evade the very purpose of a confession of judgment—to avoid motion practice between the parties—by agreeing in a signed Settlement Agreement to enter into the confession of judgment and then simply refusing to sign the document. The parties inserted the confession of judgment requirement in the Settlement Agreement due to plaintiffs' prescient concern about defendants' willingness to pay. (*See* Joint Mot. for Final Approval at 13 & n.8.) Accordingly, Stark is required to pay the accelerated May 2015 payment (Installment 5) due to his default as well as the additional 30% of his total obligations as set forth in the confession of judgment provision.[6]

---

[6] The confession of judgment provides that in the event of default, Stark agrees to confess to a judgment in the amount of "30% more than [his] share of the total settlement under this agreement . . . [which] shall be a fair value for the claims asserted in this action." (MOU at 1.) The Second Circuit has permitted defendants to confess to more than the settlement amount where, *inter alia*, "plaintiffs had sustained damages, costs and expenses well in excess" of the agreed-upon amount. *See Meyerson v. Werner*, 683 F.2d 723, 728 (2d Cir. 1982). As plaintiffs have sustained, at a minimum, the costs and expenses of (1) modifying the MOU to accommodate Stark, (2) attempting, in vain, to collect Stark's defaulted payments, and (3) ultimately

### B. Stark is obligated to pay prejudgment interest on his defaulted settlement obligations.

Plaintiffs also seek prejudgment interest on the two payments on which Stark defaulted—the portion of Installment 2 that he failed to pay ($33,869) as well as the entirety of Installment 4 ($48,333.33). In New York, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. §§ 5001(a). Such interest shall be computed "from the earliest ascertainable date the cause of action existed" at the rate of 9 percent per annum. *Id.* §§ 5001(b), 5004. A district court may award prejudgment interest where a defendant has defaulted on his settlement payments. *See, e.g., Jean v. Auto & Tire Spot Corp.*, No. 09-Cv-5934, 2013 WL 2322834, at *5 (E.D.N.Y. May 28, 2013); *Kasperek v. City Wire Works, Inc.*, No. 03-Cv-3986, 2009 WL 691945, at *3 (E.D.N.Y. Mar. 12, 2009) ("[P]laintiffs are entitled to prejudgment interest on the [settlement] installments that were not timely paid.").

Plaintiffs were entitled to the full Installment 2 and Installment 4 payments, and had they timely received this money, they would have been able to earn interest on it. To make them whole, prejudgment interest is warranted. *See Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581 (2001). Stark is directed to pay 9% prejudgment interest on the $33,869 of Installment 2 from the date he defaulted—February 7, 2013—through the date judgment is entered. Stark is also directed to pay 9% prejudgment interest on the $48,333.33 of Installment 4 from May 1, 2014 through the date judgment is entered.

### IV. CONCLUSION

This Court has reviewed the terms of the Settlement Agreement as found in the MOU and the Addendum and concludes that a valid and binding contract exists between plaintiffs and Stark. Stark cannot avoid

---

moving to enforce the Settlement Agreement, and the parties agreed to this term in an arms-length negotiation approved by the Court, the Court will enforce it here.

his contractual obligations because he has decided that the settlement terms no longer suit his interests. Accordingly, this Court grants plaintiffs' motion to enforce the Settlement Agreement (Dkt. No. 140). Stark is directed to pay plaintiffs $239,285.67, plus prejudgment interest as set forth above.

Dated: New York, New York
       March 4, 2015

SO ORDERED:

Sidney H. Stein, U.S.D.J.

15